**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

WARITH T. A. ZAJRAEL a/k/a
HERMAN HUNTER, IV, ADC #094066                                        PLAINTIFF

v.                                            2:07-cv-00158-JMM-JJV

GREG HARMON, Warden, East
Arkansas Regional Unit, Arkansas
Department of Correction; *et al*.                                        DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James

M. Moody.   Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection. **Since this case is set for a jury trial on December 6, 2010, an original and one copy**

**of your objections must be received in the office of the United States District Court Clerk no**

**later than seven (7) days from the date of the findings and recommendations.**  The copy will

be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right

to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a new hearing for this purpose before either the District Judge or

Magistrate Judge, you must, at the time you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence to be proffered at the new hearing (if such a hearing is granted)

was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.      INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 121), and Plaintiff's Response to Motion for Summary Judgment (Doc. No. 127).  Plaintiff, Warith Zajrael (also known as Herman Hunter, IV), is a state inmate at Tucker Maximum Security Unit of the Arkansas Department of Correction (ADC).  He filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging a violation of his First Amendment right to free exercise of his religion, and a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq,* while incarcerated at the East Arkansas Regional Unit (EARU) in August 2005.

Specifically, Plaintiff alleges prison officials conducted two shakedowns of his administrative segregation (ad seg) cell and  confiscated numerous religious and non-religious books, together with a prayer cap, rug, oil, and thikr beads.  Plaintiff also claims prison officials failed to send his property home despite sufficient funds in his inmate account, causing his property to eventually be destroyed.

Defendants are former EARU Warden Greg Harmon, Assistant EARU Warden Randy Jackson, and EARU Sgt. Valerie Westbrook.  Plaintiff asks for monetary and injunctive relief from Defendants.

## II.    FACTS

According to his Original and Amended Complaints (Doc. Nos. 2, 8), prison officials conducted shakedowns of ad seg cells at the EARU in August 2005, following a stabbing incident. During the first shakedown on August 15, 2005, officers confiscated eight paperback fiction books from Plaintiff's cell.  During the second shakedown on August 29, 2005, officers confiscated 22 additional books, mostly religious, together with the prayer cap, rug, oil, and beads.  Plaintiff states he practices both Christianity and Islam, and used the religious books to educate himself and aid in his religious practices.  Therefore, confiscation of his religious materials impacted his ability to adequately practice his religion.  Plaintiff alleges he arranged for his property to be sent home, but that Defendants claimed his inmate account lacked sufficient funds and the property was never sent. Instead, prison officials destroyed Plaintiff's confiscated property pursuant to prison policy.

## III.    SUMMARY JUDGMENT MOTION

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See  Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-

movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

### A.      Exhaustion

Defendants state Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.   The ADC grievance policy in effect at the time, Administrative Directive (AD) 04-01, required inmate grievances to include a "brief statement that is specific as to the substance of the complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate." (Doc. No. 123-5, p. 5).   Defendants also provide the affidavit of ADC Grievance Coordinator Tiffanye Compton, who states Plaintiff did not file and fully exhaust a grievance naming Defendants which dealt with the confiscation of his prayer rug, cap, oil and beads. (Doc. No. 123-1, p.3).   In addition, Defendants state while Plaintiff submitted three grievances complaining about the confiscation of religious books, none of the grievances states the three Defendants actually confiscated the books or participated in the removal of Plaintiff's books. Therefore, based on the ADC policy and the PLRA, Defendants state Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies prior to filing a lawsuit.

In his Response, Plaintiff refers to grievance EAM-05-00922, which he filed on September 7, 2005.  (Doc. No. 123-2).  In this grievance, Plaintiff lists the confiscation of his books and study materials, and states he wrote all the wardens, the major, the captain and corporal, Ms. Westbrook, for help in dealing with the situation.  Plaintiff states since both Defendants Harmon and Jackson

were wardens at the EARU at the time, he has adequately identified all three Defendants as required

by the grievance procedure and the PLRA. He also states his reference to "study materials" includes

the prayer cap, rug, oil and thikr beads which were confiscated.

According to the PLRA,

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted.

42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that

administrative remedies be exhausted prior to the filing of a lawsuit. *Booth v. Churner*, 532 U.S.

731, 741 (2001).

After careful review of Plaintiff's grievance, the Court finds Plaintiff adequately identified

the three Defendants in grievance EAM 05-00922 to fairly satisfy ADC policy and the exhaustion

requirements of the PLRA. The ADC grievance procedure provides that grievances should be

specific as to the date, place, and personnel involved. In the first part of the grievance Plaintiff

refers to approval he received from Warden Harmon and Assistant Warden Jackson to order some

religious materials. He then states a shakedown occurred on August 2005 and that many of the

religious books and study materials were confiscated. He continues, "I've wrote all the Wardens,

Major, Capt. and corporal-Ms. Westbrook to no avail." (Doc. No. 123-2, p. 1). The Court finds this

grievance sufficiently identifies the three Defendants concerning Plaintiff's claims of confiscation

of the books, and that the study materials could include the prayer cap, rug, oil and thikr beads.

Therefore, the Court finds Plaintiff adequately exhausted his administrative remedies prior to filing

this lawsuit.

B.      RLUIPA CLAIM

1.      Defendant's Arguments

Defendants state Plaintiff cannot support this claim because he cannot show the confiscation substantially burdened his ability to practice his religion.  The RLUIPA statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution [prison]...unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."   42 U.S.C. § 2000cc-1(a).

Defendants state ADC officials confiscated Plaintiff's books pursuant to a Unit policy which permits inmates in ad seg to keep four books, two religious books, two magazines, and two newspapers in their cell at one time.   (EARU 10.01.0 (G)(12)(13), Doc. No. 123-7, p. 4). Defendants state the ad seg policy is necessary due to smaller living quarters and reduced privileges for ad seg inmates, and note that although officials confiscated 30 books from Plaintiff, they left between 10 and 15 books in his cell, including the Holy Bible and the Quran.[1]

Defendants further state that because Plaintiff cannot show a substantial burden of his freedom of exercise under RLUIPA, it is not necessary for the Court to determine whether the

---

[1]Plaintiff's Interrogatory responses, referred to in his deposition testimony, refer to the following books left in his possession: *The Seal of the Prophet and His Message – Lessons on Islamic Doctrine*, Sayyio Mujtaba Musavi, 1989; *Islam in Focus*, Hammudah Abd Al Ati, 1998; *Imam Ali Ibn Abi Talib: Sermons-Nahjul Balaaghah*, Ahlul-Bayt – Assembly of America, 1996; *In Shade of the Quran*, Sayyid Qutb, 2001; *A Glance at the Life of the Holy Prophet of Islam,* Dar Rah Haqq, 2002; *Endless Bliss – 3d Fascicle*, M. Siddik Gumus, 2001; *Endless Bliss – 5th Fasicicle*, Huseyn Hilmi Isik, 2001. Holy Quran, paperback; NIV Bible, paperback; *Principles of Islamic Teaching*, Dar Rah Haqq;, 1990; *English Translation and Commentary of the Holy Quran*, Abdullah Yusuf Ali, 2006; *Experiencing God*, with workbook, Henry Blackaby; *Your way to Islam*, Dr. Mhamad Sullivan Al-Ashqer, 1993; *Islam – A Guide for the American Muslin,* Iman Al Haj Ma Karoub. (Doc. No. 123-6, pp. 12-13; Doc. No. 123-14, p. 3).

regulation then serves a compelling governmental interest.  However, they defend on that basis by submitting the affidavit of Defendant Harmon, who states the limit on property for ad seg inmates is a compelling interest because space is limited and excess property creates a fire hazard, invites rodent and pest issues, and provides additional opportunities to hide weapons and contraband. (Doc. No. 123-8).

Defendants also note that even if this Court finds a violation of Plaintiff's right to exercise his religion, he cannot recover money damages from Defendants under RLUIPA.  They cite *Boles v. Neet*, 402 F.Supp.2d 1237, 1241 (D.Colo. 2005), where the Court held claims for damages are precluded under RLUIPA, and the appropriate relief should be limited to injunctive or declaratory relief against a governmental entity.   Defendants add that they are not subject to suit in their individual capacities under RLUIPA, citing *Boles, supra*, and *Rowe v. Davis*, 373 F.Supp.2d 822, 828 (N.D.Ind. 2005).

### 2.    Plaintiff's Arguments

Plaintiff states all the confiscated books are necessary for the practice of his religion, because he follows the teachings of different Islamic sects, and the Imams provided by the prison system do not belong to those sects.  Therefore, Plaintiff states he must educate himself about all the teachings, and the question about the burden on his free exercise is a factual one which should be determined by a jury.   In addition, Plaintiff challenges the Defendants' position that prison safety and security is actually a compelling government interest.  Plaintiff states the rule is only loosely enforced, as evidenced by the fact that prison officials left more than six books in his cell, and notes that prison officials did not search his non-confiscated books for weapons.  Finally, Plaintiff states whether or not the prison policy is the least restrictive means necessary, is a question for a jury to decide.

3.      **Analysis**

After considering the evidence submitted and the arguments in support of the parties'
respective positions, the Court finds Plaintiff has failed to meet his burden under RLUIPA to show
the confiscation of his religious books and study materials pursuant to the ad seg policy substantially
burdened his ability to practice his religion.  Plaintiff must show, "as a threshold matter, that there
is a substantial burden on his ability to exercise his religion."  *Singson v. Norris*, 553 F.3d 660, 662
(8th Cir. 2009), *quoting Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004).  To
constitute such a burden, the policy 1) must significantly inhibit or constrain conduct or expression
that manifests some central tenet of a person's individual religious beliefs; and 2) must meaningfully
curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable
opportunities to engage in those activities that are fundamental to a person's religion.  *Gladson v.
Iowa Dep't of Corrections*, 551 F.3d 825, 832, *quoting Murphy,* 372 F.3d at 987.

Here, Plaintiff does not dispute that prison officials left him with 10 to 15 religious texts in
his cell, including the Bible and the Quran.   He also does not claim prison officials  prevented him
from acquiring additional religious materials as needed, as long as he gives up some of his older
materials to make way, or room, for the newer materials.   Therefore, as a matter of law, the
confiscation of 30 religious and non-religious materials from his cell did not substantially burden
his ability to exercise his religion.

Even if Plaintiff could clear the first hurdle of this test, Defendants' actions are supported
by a compelling governmental interest in maintaining order, safety, and security.  "While prisoners
retain their constitutional rights, they are subject to limitations on those rights 'in light of the needs

8

of the penal system.'" *Gladson*, 551 F.3d at 831, *quoting Murphy*, 372 F.3d at 982.  Although the Defendants' burden in RLUIPA cases is a higher burden than in First Amendment free exercise situations, courts "afford a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden." *Murphy*, 372 F.3d at 987.   In this case, Defendant Harmon explains in his affidavit that ad seg cells are small, and that limitations on personal property are required to safely house the inmates and minimize the activities of rodents and other pests.  (Doc. No. 123-8, p. 3-4).  Harmon also explains ad seg inmates are treated with heightened scrutiny because their assignment in general population poses a serious threat to the good order of the institution, and property limits are necessary to curtail their ability to hide weapons and other contraband.  He further notes that EARU contains 432 ad seg cells and limits on inmates' personal property is a matter of institutional security, regardless of an inmate's religious affiliations.  *Id.* Excess property is stored for 30 days to allow the inmates time to send the property home or otherwise dispose of it according to ADC policy.  *Id.*

The Court finds the institution's limits on property for any inmate, especially a special management inmate, is a sufficient compelling governmental interest and is the least restrictive means for furthering that compelling interest.  Therefore, the Court finds as a matter of law that Defendants' actions did not violate RLUIPA.

### C.    First Amendment Claim

#### 1.    Defendants' Arguments

Defendants state the policy at issue does not violate Plaintiff's First Amendment right, because the regulation is reasonably related to legitimate penological objectives, and meets the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1978), for the Court to consider:

1)      Whether a valid rational connection exists between the prison regulation and the legitimate governmental interest set forth;

2)      whether alternative means of exercising the right remain open to prison inmates;

3)      the impact accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources;

4)      the absence of ready alternatives available to the prison.

482 U.S. at 89-90.

First, Defendants say the goal of the policy is "to establish a standardized system for the operation of a special unit for inmates needing Administrative Segregation."  (Doc. No. 123-8, Harmon Aff., quoting ADC Policy 10.01.0).  They state the need to limit inmate possessions is rationally related to the purpose of the policy.   Second, Defendants note prison officials accommodated Plaintiff by leaving 10 to 15 religious books in his cell, and the policy permits six books, two newspapers and two magazines.  With respect to the third and fourth factors, Defendants state Plaintiff's desire for his property to be stored indefinitely, in light of the effect that such an accommodation could cause considering all the other ad seg inmates, would greatly burden the prison's storage and staffing requirements.   Therefore, alternatives to the policy are not available.

## 2.      Plaintiff's Arguments

Plaintiff admits a rational connection between the regulation and the governmental interest asserted, but states no alternative means exists for him to exercise his constitutional right.  Plaintiff states he cannot adequately practice his religion absent the books and materials which were confiscated, and he also does not have the opportunity to meet with an Imam from his preferred Islamic sect.  Plaintiff states Defendants can accommodate him by limiting his books to those which fit in his property tub, and such would be at a *de minimis* cost to the prison system.

### 3.    Analysis

The Court finds no violation of Plaintiff's First Amendment right to exercise his religion.

In determining whether a prisoner's free exercise right is violated, the Court looks to whether the

"challenged governmental action infringes upon a sincerely held religious belief," and then applies

the factors set forth in *Turner v. Safley* to determine if the regulation is "reasonably related to

legitimate penological objectives."  *Gladson*, 551 F.3d at 831, *quoting Murphy*, 372 F.3d at 983.

In this case, the Court finds a rational connection between the policy and the interest

asserted, and also finds Plaintiff is provided with alternative means to exercise his right, since the

policy permits him to keep at least six books, and since the evidence shows Defendants permitted

him to keep more than the policy limits.  The Court also finds accommodating Plaintiff's wish for

unlimited property (to fit in his property box) would have a significant impact on guards and prison

resources.  Plaintiff does not dispute Defendant Harmon's description of ad seg inmates, or the need

for maintaining safety and security among this population of inmates.  Therefore, the Court finds

no First Amendment violation.

### D.    Property/Conversion Claims

With regard to Plaintiff's destroyed property, Defendants state this type of property claim

lies exclusively with the Arkansas State Claims Commission, ARK. CODE ANN. § 119-10-204, and

that Plaintiff litigated this matter before the Commission and failed to recover. (Doc. No. 123-12).

Defendants state Plaintiff must accept the Commission's judgment, and cannot now claim damages

in this action, *citing Stephen v. Housewright*, 665 F.2d 245, 245 (8th Cir. 1981).

The Court agrees.  According to the affidavit of Assistant Warden Randy Watson, the books

confiscated from Plaintiff were placed in the property room and Plaintiff was given the opportunity

to mail them home.  (Doc. No. 127-2).  Although Plaintiff supplied an inmate check for that purpose,

he did not have sufficient funds in his account to mail the books home.  Watson also states Plaintiff's

sister called at one time about picking up the books, but as of May 30, 2006, she had not retrieved

them.  Although Plaintiff disputes this version of the facts, claiming sufficient funds in his account

to send his books home, it is clear from *Steffen v. Housewright* that this Court is without jurisdiction

to review the Claims Commission decision.

**IV.    CONCLUSION**

> IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. No. 121) be GRANTED; and

2.    Plaintiff's Complaint be DISMISSED with prejudice.

> IT IS SO RECOMMENDED this 10th day of November, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE